UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENISE OTTO,<br><br>      **Plaintiff,**<br><br>v.<br><br>WELLS FARGO BANK, N.A.;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>U.S. BANK, N.A., AS TRUSTEE FOR<br>BNC MORTGAGE LOAN TRUST<br>2006-2; PHELAN HALLINAN, LLP<br>A/K/A PHELAN HALLINANDIAMOND<br>& JONES, P.C. A/K/A PHELAN<br>HALLINAN DIAMOND, P.C. A/K/A<br>PHELAN HALLINAN & SCHMIEG,<br>P.C.,<br><br>      **Defendants.** | Civ. No. 15-cv-8240 (KM)( MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

**I. Introduction**

This federal court action, filed on November 24, 2015, arises from a state court mortgage foreclosure action which went to final judgment on August 12, 2014. Denise Otto, as borrower and property owner, sues her mortgagee, U.S. Bank. In essence, her causes of action seek to undo the state court judgment of foreclosure. She also sues the attorneys who represented the mortgagee in the foreclosure and others. Now before the court are motions of U.S. Bank and the attorneys to dismiss the complaint. (ECF nos. 3, 14) Because this action is barred by the *Rooker-Feldman* doctrine and principles of *res judicata*, because the statute of limitations has run, and because the complaint otherwise fails to state a claim, the motions are granted, and the complaint will be dismissed with prejudice.

1

### A. Mortgage and State foreclosure judgment

On November 13, 2012, U.S. Bank filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Essex County. (*U.S. Bank, etc. v. Otto,* No. F-026230-12. (ECF no. 3-3) U.S. Bank was represented in the foreclosure by Phelan Hallin & Diamond, PC.

The complaint in foreclosure alleged as follows: On August 30, 2006, Denise Otto and Eugene I. Otto entered into a $160,000 note and mortgage with BNC Mortgage, Inc., secured by their property at 139-141 Western Parkway in Irvington. On January 16, 2009, the mortgage was assigned to U.S. Bank National Association, as Trustee for BNC Mortgage Loan Trust 2006-2. On September 18, 2012, it was again assigned to U.S. Bank National Association, as Trustee for BNC Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2. Otto failed to make the monthly mortgage payment due on June 1, 2011, and all payments thereafter, and the mortgage went into default. Due notice of default was given. (*See* ECF no. 3-3)

On August 12, 2014, the court entered a final judgment of foreclosure in the amount of $236,762.78, plus interest and counsel fees. A sheriff's sale was ordered. (ECF nos. 3-4, 35) The record does not disclose whether the sale has been held.

### B. This federal court action

Ms. Otto filed this federal court action on November 24, 2015, some 15 months after the entry of final judgment in the state foreclosure action.

Count 1 seeks rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, because adequate disclosures were not given in connection with the loan in 2006. Otto alleges that "no consummation of the transaction between BNC and Plaintiff took place as one part to the transaction, the actual lender, is not disclosed to Plaintiff." The reference is apparently to U.S. Bank's

2

subsequent assignment of the mortgage. Ms. Otto alleges that she sent a notice of rescission on August 15, 2015.

Count 2 seeks enforcement of rescission under 15 U.S.C. § 1638(a)(1). Count 3 seeks enforcement of rescission under 12 C.F.R. § 226.23. Count 4 asserts that the transaction was never consummated, and that therefore the three-year deadline on the right to rescind was never set in motion.

Count 5 asserts that Wells Fargo, as servicer, and the Phelan firm, as attorneys, violated a criminal statute, 15 U.S.C. § 1611, by pursuing the foreclosure and seeking a sheriff's sale on a loan that they knew had been validly rescinded.

Count 6 seeks restitution under 12 C.F.R. § 1026.23 based on the rescission.

## II.  Standard on a motion to dismiss

Defendants have moved to dismiss the Complaint for lack of jurisdiction, citing, *inter alia*, the *Rooker-Feldman* doctrine (*see infra*). Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon

3

which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, defendants have attached records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163

4

> F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

**Analysis**

    **A.**   ***Rooker-Feldman***

Defendants first move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*

*Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The *Rooker-Feldman* doctrine applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *Feldman, supra; Rooker, supra; Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992).

This case involves a "state-court judgment[] rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. A final judgment of foreclosure was entered in New Jersey Superior Court on August 12, 2014. It was not until some fifteen months later, on November 24, 2015, that Ms. Otto filed this federal court action.[1]

---

[1]  That the sheriff's sale may not yet taken place does not detract from the judgment's finality for purposes of *Rooker–Feldman*:

> That the foreclosure judgment had been entered is sufficient to invoke *Rooker–Feldman*. Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage. *Sheerer v. Lippman & Lowy*, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A.1939); *Central Penn Nat'l Bank v. Stonebridge, Ltd.*, 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch.Div.1982). *See generally* 30A N.J. Prac. Law of Mortgages § 31.25. The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage. *See* N.J.S.A. 2A:50–36; *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 383 N.J.Super. 562, 570, 893 A.2d 1 (App.Div.2006) *rev'd on other grounds by* 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." 30A N.J. Prac. Law of Mortgages § 31.25.

The question remaining is whether the claims in this federal court action were previously adjudicated in, or are inextricably intertwined with, that state foreclosure proceeding. All of Ms. Otto's federal causes of action share a common element: that the 2006 mortgage was never valid, that it could be rescinded at any time, and that it was rescinded.

The state foreclosure judgment necessarily decided in U.S. Bank's favor the following essential elements: the validity of the note and mortgage; the alleged default; and the Bank's right to foreclose (which would include its standing by assignment or otherwise). *See Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394, 622 A.2d 1353, 1356 (Ch. Div. 1993). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840. As to federal actions following mortgage foreclosures, the case law gives some guidance as to what issues are actually adjudicated or inextricably intertwined.

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), for example, considered a post-foreclosure federal claim, like this one, for rescission of the mortgage. A finding that no valid mortgage existed, the Court held, would eliminate the basis for the prior foreclosure judgment. Such a claim is an easy case for application of *Rooker-Feldman*. A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*. Because such a plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained," his claim is inextricably intertwined with the state proceedings. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). *See also Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages); *Moncrief v. Chase Manhattan Mortgage*

---

*Patetta v. Wells Fargo Bank, NA*, Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010).

7

*Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action).

Under these precedents, Ms. Otto's claims against the mortgagee defendants are clearly barred, as the issues essential to them were actually adjudicated in the state foreclosure action. To hold—as Ms. Otto asks this Court to do—that the mortgage was not valid, would in effect declare the foreclosure judgment to be invalid. It would be tantamount to a declaration "that the state courts' default judgments were improperly obtained." *Knapper*, 407 F.3d at 581.

That leaves the claims against Wells Fargo, as loan servicer, and Phelan Hallinan, the attorneys. These, too, rest on the assumption that the mortgage was invalid or rescinded. The alleged wrongfulness of these defendants' actions stemmed from their attempts to enforce in court what Ms. Otto deems to be an invalid mortgage. Thus they stand on the same footing as the claims against U.S. Bank.

Ms. Otto's claims are claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. They are barred by *Rooker-Feldman*.

### B.  Other Grounds

*Rooker-Feldman* should dispose of the matter as to any claim that is not "independent" of the merits of the foreclosure. To remove doubt, however, I briefly consider in the alternative some other grounds for dismissal under Rule 12(b)(6). [2]

---

[2]  Where the federal plaintiff presents "some independent claim," *i.e.*, one that does not implicate the validity of the state court judgment, the *Rooker-Feldman* doctrine does not apply. *Exxon Mobil*, 544 U.S. at 292 (quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)). Upon completing the *Rooker-Feldman* analysis and confirming that it possesses jurisdiction, the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

8

### 1. Res judicata

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata*. *See Ayres-Fountain*, 153 F. App'x at 93 ("even if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by res judicata"). I find that to be the case here. Although *res judicata* is an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). The New Jersey doctrines of claim preclusion and the entire controversy rule furnish additional and alternative grounds for dismissal.

#### a. New Jersey doctrine of claim preclusion and the entire controversy rule

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that state is New Jersey.

New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94, 101 S. Ct. at 414; *Watkins*, 124 N.J. at 412, 591 A.2d at 599

9

("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.")

Claim preclusion in the traditional sense tends to be subsumed by New Jersey's "entire controversy" rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or occurrence. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)).

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

Like traditional res judicata, the state entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the

10

> withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3d Cir. 1999).

The preclusive effect of the rule is explicit: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A. But the rule applies only to claims that could have been permissibly joined in the prior proceeding. And the entire controversy rule itself notes the limitations on claims in a foreclosure proceeding: "... except as otherwise provided by R. 4:64-5 (foreclosure actions) ...." *Id.*

The cited rule, N.J. Ct. R. 4:64-5, limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure.[3] It follows,

---

3   **4:64-5. Joinder of Claims in Foreclosure**

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

Claims that could not have been brought in the first proceeding also include those that were "unknown, unarisen, or unaccrued" at the time. *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 N.J. 310, 662 A.2d 523, 530 (1995) (citations omitted). Those exceptions are not implicated here.

The entire controversy rule applies to parties, as well as claims, that were not joined in the prior action. That aspect of the rule, too, is not relevant here. *See Ricketti, supra* (requiring particular safeguards as to absent parties).

11

therefore, that only claims germane to the prior mortgage foreclosure will be precluded in a later action. If the litigant could not have brought non-germane claims in the prior action, then they cannot be precluded by the prior judgment.

As to what claims are "germane," the seminal case is *Leisure Technology-Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (App. Div. 1975). "The use of the word 'germane' in the language of the rule," said the Appellate Division, "undoubtedly was intended to limit counterclaims in foreclosure actions to claims *arising out of the mortgage transaction* which is the subject matter of the foreclosure action." 349 A.2d at 98–99 (emphasis added). There, the foreclosure defendant/borrower had pled an affirmative defense and counterclaim. The Appellate Division held that "the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants' rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action." 349 A.2d at 99.

Post-*Leisure Technology*, the germaneness rule has solidified thus:

> Indeed, the Appellate Division has been "clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div.1998).

*Zebrowski v. Wells Fargo Bank, N.A.*, No. CIV.1:07CV05236JHR, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (Rodriguez, J.); *see also Joan Ryno, Inc. v. First Nat. Bank of S. Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986).

A Third Circuit case persuasively penned by Judge Fuentes (himself a product of the New Jersey bench and bar) illustrates the "germaneness" issue as it bears on the entire controversy doctrine. In *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011), a

foreclosure action went to final judgment. After bankruptcy-related delays that staved off a sheriff's sale, the borrower/owner paid a reinstatement fee and obtained a dismissal of the foreclosure. The borrower then brought a putative class action in federal court, claiming that the lender had charged excessive fees in connection with reinstatement. The district court, applying the entire controversy doctrine, dismissed the case on a Rule 12(b)(6) motion. The Third Circuit affirmed.

Judge Fuentes found that the borrower's claims could have been brought in the foreclosure under New Jersey practice:

> Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (1975). Here, Coleman's claims arose directly out of a reinstatement quote that was provided to her as an alternative to a foreclosure sale, and the excessive fees allegedly charged by Chase would not have been charged but for the foreclosure action. Accordingly, Coleman's causes of action arose out of and were germane to the original foreclosure action.

446 F. App'x at 472. Because the claims would have been "germane" in the sense that they arose from the relevant mortgage transaction, they were now barred by the entire controversy doctrine. *See also Dennis v. MERS/Merscorp Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 11-4821 JLL, 2011 WL 4905711, at *1 (D.N.J. Oct. 13, 2011) (barring claims by plaintiff who had defaulted in state foreclosure action that "as a result of defective assignments of her mortgage, all claims to the property are void").[4]

### b. Application to this case

The entire controversy rule applies here. The state court mortgage foreclosure was "a previous state-court action involving the same transaction," *i.e.*, the mortgage, the default, and the foreclosure itself. *Bennun*, 941 F.2d at 163 (3d Cir. 1991). The subject matter of that prior action necessarily

---

[4] A case reaching the opposite result is *In re Mullarkey*, 536 F.3d 215, 229-30 (3d Cir. 2008). There, however, the court determined that the plaintiff's federal cause of action truly arose, not from the foreclosure, but from alleged misrepresentations in related bankruptcy proceedings.

13

embraced that of this federal action, and the parties are the same (except for Phelan Hallinan, which was an attorney, not a party, in the earlier action, and is sued on that basis).

In the alternative, the three prerequisites to claim preclusion apply here.

(1) There was a final judgment on the merits.

(2) The prior suit involved the same parties or their privies.

(3) The subsequent suit (*i.e.*, this one) is based on the same transaction or occurrence. It grows out, and is based on, the validity, or not, of the mortgage. *Watkins,* 124 N.J. at 412, 591 A.2d at 599.

A claim that the mortgage transaction "was not consummated" or that the mortgage has been rescinded obviously bears direct on the merits of the mortgage foreclosure itself. It follows, then, that claim preclusion and the entire controversy doctrine extinguish any such subsequent federal-court claim that either was decided, or else could have been joined but was not raised in the prior foreclosure action. As to any claims that arguably survive *Rooker-Feldman,* the motion to dismiss on grounds of *res judicata* and the entire controversy rule would be granted.

### 3. Failure to state a claim

Finally, I consider whether the complaint states a claim under Rule 12(b)(6). In many important respects it does not, as a matter of law.

A claim for monetary damages under TILA, for example, has a one-year statute of limitations, which runs from the date of closing of the loan. *See* 15 U.S.C. § 1640(e); *In re Community Bank of Northern Virginia,* 622 F.3d 275, 303 (3d Cir. 2010). A request for rescission under TILA must be brought within three years. That is a firm deadline, *i.e.,* a statute of repose that is not subject to tolling. *See* 15 U.S.C. § 1635(f); *Community Bank,* 622 F.3d at 301 n.18; *Williams v. Wells Fargo Home Mtge., Inc.,* 410 F. App'x 495, 499 (3d Cir. 2011). The limitation period runs from the loan closing on August 30, 2006. The damages claim therefore expired in 2007, and the rescission claim in 2009. Notice of rescission, according to the complaint, was served in 2015—six years

after the last deadline had expired.

Ms. Otto claims that the transaction was "never consummated." By that she seems to mean that it was somehow self-rescinding in 2006. There is no legal support for that position, which would imply that the right to rescind remains open forever. Under established case law, the deadlines run from the closing of the challenged loan.

Claims based on positions taken in the state court litigation would face an additional barrier in the form of the litigation privilege. The litigation privilege "ensures that [s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (internal quotations and citations omitted). The privilege is "expansive" and "well-established" in New Jersey. *Id.* It applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* (internal quotations and citations omitted). At any rate, no specific false statement is identified, other than those based on plaintiff's personal belief that the mortgage never was valid.

Any claim under 15 U.S.C. § 1611, a criminal statute containing no civil cause of action, would likewise be doomed.

## CONCLUSION

Defendants' motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine, and in the alternative under Rule 12(b)(6) for failure to state a claim, are therefore GRANTED, and the complaint is dismissed with prejudice.

Dated: July 15, 2016

                                                                     _____
                                                                     KEVIN MCNULTY
                                                                     United States District Judge